THE BLOOMFIELD COAL AND MINING COMPANY, Appellant,
v. GEORGE C. TIDRICK, Executor.

**Construction of Mining Lease.** A lease of land for mining, recited it was on the conditions: (1) That if coal be found under the premises in quantities to justify mining, the lessee shall at once proceed to mine and remove it, and so continue during the term of the lease so long as coal in paying quantities is found; the lessee to remove the coal through its shaft adjoining the premises. (2) That the lessee shall pay as royalty a certain amount per bushel. (3) That the lessee agrees to mine not less than two thousand four hundred tons each year, commencing with the second year, the lessee to be under no obligation to mine or pay royalty the first year; and that, if two thousand four hundred tons is not mined in one year after the first, this shall not forfeit the lessor's right to receive full royalty for that amount, namely, three hundred dollars, the lessor agreeing that, in case of failure to mine two thousand four hundred tons in a year, the amount so paid him in excess on the royalty on the coal actually mined shall be credited on royalty account, and applied on royalty for coal mined in subsequent year or years, it being understood that the mining of more than two thousand four hundred tons in a year, and payment of royalty thereon, shall not exempt the lessee from its obligation to pay the royalty of three hundred dollars, for each subsequest year in which less than two thousand four hundred tons is mined. And (6) that the royalty on coal mined shall be payable monthly. *Held*, that the lessee, not having mined the land for several years, but having at the end of each year after the first, paid the lessor three hundred dollars, could not, on thereafter sinking a shaft on the land, and finding that there was no coal there, recover the amount paid, though it had been unable to reach the land through the shaft which it had on adjoining land, and though both parties supposed there was coal in the leased land; the payments being merely to avoid a forfeiture of the lease.

SAME. Contemporaneous facts may be considered in construing a lease of coal lands in order to arrive at the intent of the parties.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

MONDAY, OCTOBER 12, 1896.

PROCEEDING in probate for the allowance of a claim. The defendant is the legal representative of R. L. Tidrick, deceased. April 1, 1889, R. L. Tidrick, in writing, leased to the plaintiff company, certain mineral or coal lands for a period of twenty years. By the terms of the lease the company was to mine not less than two thousand four hundred tons of coal per annum, after the first year, on which plaintiff was to receive a specified royalty that, for the two thousand four hundred tons, would amount to three hundred dollars. If the amount mined in any one year exceeded the two thousand four hundred tons, royalty was to be paid for the excess. If the amount fell short in any year, royalty to the amount of three hundred dollars was to be paid. The particulars may be more definitely stated in the opinion. For five years the company did not mine the land, but continued its operations on adjacent lands. Each year after the first, it paid three hundred dollars under the express conditions of the lease. At the expiration of that time the company made a test of the land leased, and discovered that it did not contain coal in quantity or quality to justify mining the same. It then notified Tidrick of the fact, and demanded a repayment of the one thousand two hundred dollars, which was refused, and this proceeding is to establish a claim therefor. The facts appear in a petition filed, to which the defendant demurred. The court sustained the demurer, and from the ruling the plaintiff appealed. —*Affirmed.*

*Read & Read* for appellant.

*St. John & Stevenson* for appellee.

GRANGER, J.—The following are the essential parts of the lease for the purpose of the question before us: "This lease is made upon the following terms and conditions, which the said party of the second part makes and enters into and binds itself, its successors and assigns, to faithfully observe: *First.* If one or more mineral veins or basins of coal shall be found underneath said premises, sufficient in quality and quantity to justify mining the same, the party of the second part shall at once proceed, as hereinafter stated, with diligence, to mine and remove said coal, and so continue during the term of this lease, so long as coal in paying quanity shall be found in one or more veins; it being understood that the coal is to be removed and taken from the shaft of the Bloomfield Coal & Mining Company adjoining said premises, or the party of the second part may sink a shaft on the above described premises at such a point as shall be mutually agreed upon by the parties hereto, in which case the party of the second part is to have the use of not more than three (3) acres of surface for mining purposes.    It is understood that the party of the second part shall not deposit slate or refuse material from said shaft so as to obstruct natural drainage, or cause water to stand on said premises.    *Second.*    The party of the second part shall pay as royalty to the first party for all coal mined upon said ·premises and passed over a one and three-fourths ($1\frac{3}{4}$) inch screen the sum of one-half ($\frac{1}{2}$) of one (1) cent per bushel; size, length and incline of said screen to be such as is provided by law.    And it is further agreed that all coal mined and screened as provided shall be accurately weighed, and the weight kept in a book, which

book, at all reasonable times, shall be accessible and open to the inspection and examination of the party of the first part or his agent. At the end of each month the party of the second part shall furnish to the party of the first part, at his office in Des Moines a detailed statement in writing of all coal mined during the preceeding month, giving the names of the persons by whom mined, and the quantity mined by each. *Third.* The party of the second part agrees to mine not less than two thousand four hundred (2,400) tons of coal during each year of the continuation of this lease, commencing with the second year, or commencing April 1st, A. D. 1890, it being expressly understood and agreed that the said second party is under no obligations to mine coal or pay royalty therefor during the first year of this lease, namely, from April 1st, 1889, to April 1st, 1890. It is also further agreed that if the amount of two thousand four hundred (2,400) tons shall not be mined during any one year after the first year, as above stated, this shall not forfeit the right of the said first party to receive his full royalty for that amount, namely, three hundred dollars ($300). If in any subsequent year, a failure to mine that amount may occur, the said first party, however, agreeing that any sum so paid him which shall be in excess of the actual amount of coal mined as herein provided, shall be credited on royalty account, and apply on royalty for coal mined in subsequent year or years. It is expressly agreed and understood that if more coal is mined during any one year than is required by the terms of this lease, such excess shall not exempt the second party from its obligations to pay the royalty of three hundred dollars ($300) for each subsequent year in which less than two thousand four hundred (2,400) tons of coal is mined. * * * *Sixth.* The royalty on coal mined shall be due and payable at the office of the first party in the city of Des Moines,

Iowa, on or before the twentieth day of each month suc-
ceeding the month in which the coal is mined, and any
royalty due said first party shall be a lien upon all per-
sonal property belonging to the party of the second
part from the date it becomes due until paid, and said
sums shall bear eight (8) per cent. interest per annum
from the time they become due until paid, payable
annually." The other parts of the lease provide how
the work shall be done, and the conditions upon which
the plaintiff may declare a forfeiture.

The original petition, from which the facts in the
statement are taken, was filed April 18, 1895. June 4,
thereafter, an amendment to the petition was filed,
and its importance requires that it should appear in
the opinion. It is as follows: "Comes now the Bloom-
field Coal & Mining Co., and, by leave of court had,
amends its claim and statement heretofore filed herein,
and in addition thereto alleges: That at the time
said lease was made and entered into, the said coal
company was operating a coal mine located on lands
adjacent to the said lands of the said R. L. Tidrick, and
was engaged in mining and removing coal from the
said lands, but had at the said time not reached the
said lands of the said Tidrick with its entries and open-
ings, but was still some distance away; that the said
contract was made and entered into by both of the
parties thereto on the assumption and under the belief
that there was coal underlying said tract of land in
minable quantities and quality; that the said contract
was made by both the parties thereto with reference
to the supposed existence of coal thereunder; that on
the 7th day of April, 1891, the claimant had not yet,
in the conduct of its mining operations, reached the
land of the said R. L. Tidrick, and up to that time no
coal had been mined or removed therefrom; that on
the 5th day of April, 1892, the said company had, in
the conduct of its mining operations, not reached the

lands of the said Tidrick, nor had it, in the conduct of
its mining operations, reached the land of the said
Tidrick on the 5th of April, 1893, nor on the 5th of
April, 1894, and on said dates no coal had been mined
or removed from said land of the said Tidrick; that
during said period the said coal company had dili-
gently endeavored to so conduct its mining operations
as to reach the land of the said Tidrick, but had failed
to do so through no fault of its own; that on the several
dates stated the said coal company, pursuant to the
terms and conditions of the said contract, as under-
stood and acted upon by the parties thereto, and
because obligated so to do, paid to the said R. L. Tidrick
the several sums of money stated, the same being for
each year the agreed amount of royalty upon twenty-
four hundred (2,400) tons of coal required to be paid
as by the said contract provided; that at the time and
times of making said several payments, both the said
Bloomfield Coal Co. and the said R. L. Tidrick were
ignorant of the fact that there was no coal underlying
the surface of said real estate; that the said R.. L.
Tidrick accepted and received the said several sums of
money under the terms and conditions of said con-
tract, and as being due and payable on said several
dates by the terms of the said contract; that during
the said period said coal company had made repeated
efforts to extend its entries to the said land of the said
Tidrick, but had been unable to do so because of the
fact of the vein of coal running out before reaching
the land of the said Tidrick; that, after so attempting,
but failing, to reach the said land by extending its
entries, the said coal company, after the 5th day of
April, 1894, by drilling and testing the said lands,
ascertained that there was no coal lying thereunder
in mining quantities or quality, and upon so ascertain-
ing that there was no coal thereunder, the said com-
pany, on the —— day of September, 1894, notified the

said R. L. Tidrick of said fact, and demanded the return and repayment to it of the said sum of twelve hundred dollars ($1,200), as heretofore stated. Your said claimant states that the said contract was entered into by reason of and upon the mutual mistake of itself and the said R. L. Tidrick that there was coal underlying the surface of said premises in minable quantities and quality; that the said moneys were paid because required to be paid by the terms of said contract, in ignorance of the fact that there was no coal underneath said premises, and still under the mutual mistake that there was coal underneath the premises; that the said coal company did not enter upon the said premises, or use or occupy the same, or any part thereof, save and except to drill and make the tests aforesaid; and the said claimant, still stating and claiming in addition hereto, as stated and claimed in its original application, avers that the consideration for the said contract and for the payment of said money has wholly and entirely failed."

Appellant presents the following as the controlling propositions in the case: "In our opinion, the controlling question in this case is the construction of the covenants of the lease with the respect to the payments required thereby to be made. If, under the contract, the only compensation required to be made is for coal mined and removed from the premises, in our view of the case, the plaintiff should recover. If, however, the contract requires compensation to be paid for something other than royalties upon coal mined, and irrespective of whether coal existed or not,—as, for instance, for the privilege of holding the land and prospecting,—then, we think, it having received the consideration for the payments made, the plaintiff may not recover."

There are some obligations of the lease, assumed by appellant, about which there is no room for dispute,

and it will be well to notice them first, and thus aid to a conclusion as to the disputed questions. By the first section, plaintiff obligated itself to commence at once to mine for coal on the premises, and to so continue during the lease, if coal was found in paying quantities. The second section fixes the royalty per bushel to be paid. The third section fixes the obligation as to the minimum amount of coal to be mined each year after the first, and this minimum fixes the minimum amount of royalties to be paid, regardless of the amount mined. It will be seen that, while the lease requires the plaintiff to commence at once to mine coal, and continue to do so, it at the same time exempts it from mining or paying royalties the first year. These provisions, in view of the admitted facts, are not, necessarily, inconsistent. When the lease was made, there was no shaft on the land leased through which coal could be taken out, and it had not been reached through the mining operations on the adjacent land. It was clearly understood that preliminary work was necessary to the actual taking out of coal, and, undoubtedly, this work is spoken of in the lease as mining; that is, the doing of such work was contemplated in the provisions as to commencing and continuing the mining operations. Without doubt, the first year was regarded as a period in which to be ready to mine the minimum amount of coal yearly, and then payments were to commence. Nothing in the lease, nor in the facts pleaded and admitted by the demurrer, would excuse the company from conforming to the requirements of the lease as to mining coal the second year, and paying the royalties thereon, if the coal was there. The demurrer admits facts well pleaded, but not others. The entire contract is contained in the lease, and facts pleaded to justify a legal inference, different from that arising from the terms of the lease, are not well pleaded. Contemporanous

facts may be considered, in construing the lease, tc
arrive at the intent of the parties; and, in so far as
such facts are pleaded, they are to be considered.

Appellant says, as we have quoted above: "If,
under the contract, the only compensation required
to be made is for coal mined and removed from the
premises, in our view of the case, the plaintiff should
recover." We incline to the view that the statement
is correct. But is that the meaning of the contract?
Let us suppose that when the test was finally made
coal was found in quality and in quantity so that the
minimum amount could have been mined, and from
that time on that amount had been mined, and no
more. We assume that, under that state of facts,
there could be no claim that there could be a recovery
for previous payments, nor is it to be claimed that
such payments could be made to apply on royalties
for other years. For what, then, would the one thou-
sand two hundred dollars in question have been
paid? Not for "coal mined and removed from the
premises," for none had been. By no possible con-
struction could this money have been made available
to plaintiff for future royalties or use. It served but
one purpose to plaintiff, which was, while it was in
default in the performance of its contract, to keep
alive its rights to mine in the future. Under the
facts, there could be no condition by which these
payments could be made applicable to the facts
which plaintiff states as a basis for recovery;
that is, a compensation for coal mined and removed.
Plaintiff paid the money knowing it could never
be for royalties on such coal. The proposition is not
to be avoided that it paid the amount to avoid
a forfeiture of the lease. Again, by the terms of the
lease, if less than two thousand four hundred tons
were mined in a year, royalties were to be paid as if
that amount had been mined, and the excess so paid

was, in a sense, a forfeiture; that is, it became a loss to plaintiff. This also proves that payments were contemplated not for royalties on coal actually mined. It was this particular provision that must have led to the payments in question. That the parties supposed there was coal in the land, and in quantities so that the minimum amount could be mined, is true; and it may be conceded that, upon the discovery of the fact that there was not, the lease would become inoperative. It was plaintiff that was to make the test. Had it observed its agreement, the fact would have been known before a payment was due. It had the right to make the test by its operations from adjacent land, or by sinking a shaft on the leased premises. The lease does not speak of a test, but a test would have resulted from an observance of the contract as to commencing at once and mining each year. It is not a correct statement, to say that these payments had any connection with or relation to coal mined or to be mined. By the terms of the lease, the royalties became due monthly. These payments were made at the close of the year, when plaintiff knew that no coal had been mined, and it knew that they could not be applied to coal to be mined. It is true that the parties, in fixing the compensation to be paid, had in view the actual mining of coal, under the terms of the lease, and fixed the compensation accordingly as royalties; but they also provided for the contingency of a failure, and, in such a case, made the compensation as if there had been no failure. As we have, in effect, said, the absence of the coal makes these payment no more a loss to the plaintiff than if it had been there. By these years of neglect to mine the land, with coal in it, so much time would have been lost for which the rent must be paid to avoid a forfeiture. That would have been a loss. It is the same now, and for the same reasons. This lease, for five years, stood as an incum-

brance on the premises. Both parties were in ignorance as to the facts, and, until plaintiff should do its duty, Tidrick must preserve to it its rights to mine if the rental was paid, so that no forfeiture was declared.

We are referred to a number of cases in Iowa and elsewhere, and, as we concede the rule of the cases, it is not important to cite them. The controlling facts of this case are not involved in any of them. Our view of controlling facts is different from that of appellant. We think the latter proposition stated by him, in which he concedes that plaintiff cannot recover, is, with slight exceptions, correct. The conclusion of the district court is in harmony with ours, and its judgment is AFFIRMED.